ADAMS, Justice.
The central issue in this appeal is whether the trial court erred in determining that Harbor Life Insurance Company was not a “fiduciary” of the Alabama Junior Colleges/Community Colleges Employee Benefit Plan pursuant to the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001 et seq. The facts of this case are set forth in a previous appeal, but are repeated here for the benefit of the reader:
“The plaintiffs were all participants in an insurance plan that, due to underfunding, was unable to pay its obligations and failed. Because the plan in question is not a ‘governmental plan,’ as that term is used in the Employee Retirement Income Security Act of 1974 (‘ERISA’) (29 U.S.C. § 1001 et seq.), we hold that, except for their fraud claims against Life and Health Services, Inc. (‘L & H’), and its president, Robert Wilder, the plaintiffs’ common law claims are preempted by ERISA; therefore, the judgments against L & H and Wilder based on fraud are affirmed; the remaining judgments against Wilder and L & H, and the judgments against Harbor Insurance Company (‘Harbor’) are reversed; and the cause is remanded for entry of judgments consistent with this opinion.
“The facts that led to this appeal are somewhat complicated, but they can be summarized for the purposes of this opinion. In January 1980, Dr. William McWhorter, the president of one of Alabama’s junior colleges, became interested in organizing a consolidated health insurance plan for all of Alabama’s junior, community, and technical colleges. He sent questionnaires to the presidents of the other schools to ascertain their interest in such a plan. Once the results were compiled, they were provided to L & H, a third-party administrator of insurance plans with which Dr. McWhorter had had periodic contact concerning the then-existing insurance plan at his college.
“In the fall of 1980, a joint committee of presidents of the colleges (‘the Committee’) was appointed by the Presidents’ Association to study the then-existing insurance plans of the schools and to make recommendations for any changes. The Committee concluded that a self-funded insurance plan should be created; and it initially recommended a plan offered by Central Bank in association with Blue Cross, with life insurance provided by American Foundation Life Insurance Company.
“The Committee again contacted L & H, this time to determine whether L & H could offer a better rate for the same coverage offered by Central Bank. Wilder undertook the task of ‘selling’ the L & H plan to the Committee and, subsequently, to the individual employees. Although he knew that the plan was underfunded, based on the calculations and assumptions upon which it was premised, Wilder failed to disclose this fact to either the Committee or to the individual employees who chose to accept the plan.
“The alternative plan proposed by L & H called for lower premiums than did the plan offered by Central Bank, and it was accepted by the Committee. This plan was reinsured by Harbor. The acceptance of the L & H plan led to the creation of the Alabama Junior/Community Colleges and Technical Colleges Employee Benefit Plan (‘the Plan’). The Plan was subsequently presented to the employees of the schools and, eventually, over 1,300 employees at 28 of the schools decided to participate. The Plan collapsed after just one year of operation.
*1091 “Following the collapse of the Plan, certain participants instituted several actions to recover damages from Wilder, L & H, and Harbor. After certification of the classes and consolidation of the actions, the cases proceeded to trial. The trial court ruled that the Plan was a ‘governmental plan’ and, therefore, exempt from the provisions of ERISA. The jury returned special verdicts against Harbor on negligence claims, and against Wilder and L & H on negligence, wantonness, and fraud claims.”
Harbor Insurance Co. v. Blackwelder, 554 So.2d 329, 330-31 (Ala.1989).
In Harbor, Justice Jones, speaking for the Court, reversed portions of a judgment based on a jury verdict against Harbor Insurance Company on the negligence claim and jury verdicts against L & H and Wilder on the negligence and wantonness claims, holding that “the ‘governmental plan’ exception does not apply to [the Alabama Junior Colleges/Community Colleges Employee Benefit Plan, and, therefore, that] the provisions of ERISA are applicable here.” Id. at 334. On remand, the trial court determined that Harbor Insurance Company was not a “fiduciary” within the meaning of ERISA; the court entered a judgment in favor of Harbor, and Blackwelder appeals.
The trial court’s order finding that Harbor was not a fiduciary read as follows, in pertinent part:
“Plaintiffs contend that Harbor was a fiduciary as defined under 29 U.S.C. § 1001 [1002](21)(A), or a fiduciary with knowledge or participation in the breach by other fiduciaries, or that Harbor was a nonfiduciary who knowingly participated in a breach by a fiduciary, or that Harbor breached its duties in its capacity as a contracting party to the plan. Harbor contends that it did not act as a fiduciary in providing medical stop-loss reinsurance and that it has breached no other duties under ERISA.
“Plaintiffs contend that because the Court previously found that this plan was not preempted by ERISA, Harbor is a fiduciary. The Court fails to understand the underpinnings of this argument inasmuch as whether a party is a fiduciary under ERISA depends on whether the party exercises any discretionary authority or control respecting management or disposition of the trust assets and the nature of the specific conduct which is alleged to be a violation of a fiduciary duty. Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir.1983).
[[Image here]]
“Based on the testimony and all other relevant materials, the Court is not reasonably satisfied from the evidence that Harbor acted as a fiduciary, Schulist, or knowingly acted or failed to act upon any information in concert with other fiduciaries or that it breached any duties owed to third parties. The Court notes that the jury [in the previous appeal] found that Harbor did not breach the reinsurance contract with the Trust and that the jury found that Life and Health was not the agent of Harbor. These findings were not contested on appeal. The Court, based on its independent view of the evidence, finds the same. The fact that the jury [in the previous appeal] found that Harbor was negligent is not tantamount to a finding that Harbor is a fiduciary as defined under ERISA; moreover, the Court has no indication why the jury found Harbor guilty of negligence.
“The Court finds that Harbor did not participate in setting the rates to be •charged to the individual plan participants, and Harbor did not exercise any discretionary authority in the administration of the plan. Harbor did not possess any authority or exercise any authority to grant or deny individual claims filed by the plan’s participants — this authority was reposed in Life and Health and the Trustees.
“Finally, the Court does not find that Harbor can be held liable for the breach of the duties owed by co-fiduciaries. The Plaintiffs have failed to establish to the Court’s reasonable satisfaction that Harbor knowingly participated with the co-fiduciaries or had any knowledge of a breach and failed to remedy the breach. From the evidence it appears that Life and Health and the Trustees were aware of the shortfall but took no affirmative and timely steps to remedy the problem; therefore, it *1092 is doubtful, assuming that Harbor was aware of the shortfall, that it was capable of remedying a problem that the Trustees failed to remedy.
“Based on the evidence the Court’s conclusion is that all of the actuarial and other administrative undertakings by Harbor and U.S. Benefits were taken for the purpose of establishing the individual and aggregative attachment points for its reinsurance contract. The evidence does not reasonably satisfy the Court that these undertakings were for the purpose of setting rates to be paid by the individual plan participants. It is clear to the Court that the rates were established by Life and Health and were probably set in order to correspond to the rates quoted by another health insurer.
“Based on the foregoing, it is ORDERED that judgment is entered in favor of Harbor Insurance Company and against the Plaintiffs’ classes and that they take nothing by their suit against Harbor Insurance Company.”
R. 114-18. We agree that the trial court’s finding that Harbor was not a fiduciary with regard to the employee benefit plan is supported by the record.
A “fiduciary” is defined by 29 U.S.C. § 1002(21)(A) as follows:
“Except as otherwise provided in sub-paragraph (B), a person is a fiduciary with respect to a plan to the extend (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.... ”
29 U.S.C. § 1002(21)(A). In determining whether Harbor acted as a fiduciary in this case, we must consider the responsibilities of Harbor with regard to the plan, as well as the agreement between L & H, the trustees, and Harbor.
“The language of the regulation demonstrates that the insurance company is not necessarily a fiduciary by reason of providing contractual benefits, but rather is to be so considered if it, in addition, is given responsibility for reviewing denied claims. Not every insurer is a fiduciary for the purposes of ERISA; nor is it the ease that merely by deciding whether to pay claims submitted by insureds the insurer is thereby subjected to the responsibilities of a fiduciary. The regulation ... makes it clear that the status of an insurer as a fiduciary is not automatic but rather turns upon the provisions of the plan and of the agreement made by the insurer.”
Blue Cross & Blue Shield of Alabama v. Peacock’s Apothecary, Inc., 567 F.Supp. 1258, 1266 (N.D.Ala.1983), quoting Austin v. General American Life Insurance Co., 498 F.Supp. 844, 846 (N.D.Ala.1980). (Emphasis in Austin.)
Blackwelder, in support of the claim that Harbor was a fiduciary, offered the expert testimony of Ron Gaiser, who contended that Harbor was a fiduciary because its name was on the booklet sent to the employees regarding the plan. We note, however, that Harbor was listed on the booklet as “Rein-surer,” while L & H was listed as the administrator of the plan. Gaiser further stated that it was his opinion that the proposed single and family rates given to the trustees by L & H were provided by Harbor “ad hocly through the back door.” In contrast, Harbor contends that the rates proposed by L & H were given in order to compete with the known rates offered by a competitor, Blue Cross/Blue Shield.
The facts appear to be that L & H sought a quote from Harbor with regard to reinsurance and received a figure of $68.99 per person enrolled per month for stop-loss reinsurance with a minimum aggregate attachment of $289,758. The figures were based on a minimum enrollment of 350 employees ($68.99 per month x 350 participants x 12 months). A competitor, Blue Cross/Blue Shield, had already submitted a plan for $81.00 per family and $31.00 per single. Those figures were later revised to $79.00 *1093 per family and $30.00 per single for coverage. With knowledge of those rates, L & H sought to charge rates of $30.00 per single person and $79.00 per family. L & H anticipated that 2,491 employees would join the plan and that 1,459 of those 2,491 employees would purchase family coverage. Based on those figures, L & H predicted a gross revenue of $1,383,132 (1,459 participants x $79.00 per month x 12 months) from participation in family coverage and $371,520.00 (1032 participants x $30.00 per month x 12 months) from single coverage. Therefore, based on the figures proposed by L & H, the gross revenue on the plan would be $1,754,-652. In contrast, the charge by Harbor for stop-loss reinsurance, based on the 2,491 employees predicted by L & H would amount to $2,062,249.08 (2,491 participants x $68.99 per month x 12 months). Thus, although it is claimed that Harbor set the rates charged to the employees enrolled in the plan, it appears to be clear that the rates charged to the employees were, in fact, chosen by L & H and the trustees because they compared favorably with the rates offered by the competitor. Simple mathematics bears out the fact that the attachment figure of $68.99 per person per month was not used to come up with the single and per family rates.
Despite the appearance of Harbor’s name as reinsurer on the Plan booklet, which was given to each plan participant, and Harbor’s name on the insurance card issued to the employees, it does not appear that Harbor had any discretionary function with regard to the administration of the Plan.
“The language of the [ERISA] regulation demonstrates that the insurance company is not necessarily a fiduciary by reason of providing contractual benefits, but rather is to be so considered if it, in addition, is given responsibility for reviewing denied claims. Not every insurer is a fiduciary for the purposes of ERISA; nor is it the case that merely by deciding whether to pay claims submitted by insureds the insurer -is thereby subjected to the responsibilities of a fiduciary. The regulation relied on by [the insurance company] makes it clear that the status of an insurer as a fiduciary is not automatic but rather turns
upon the provisions of the plan and of the agreement made by the insurer.”
Austin v. General American Life Insurance Co., 498 F.Supp. 844, 846 (N.D.Ala.1980). L & H, as administrator of the plan, and the trustees were the ones with the discretionary authority over the plan. As indicated above, L & H set the rates to be charged to the employees. In addition, the plan booklet, at page 22, stated:
“Written notice of an injury or illness must be given to the Administrator within 30 days following the first loss for which benefits arising out of such injury or illness may be claimed.
“Proof of loss on which claim may be based must be furnished to the Administrator within 90 days following the date of such loss.
[[Image here]]
“The Administrator reserves the right and opportunity to examine the individual whose injury or illness is the basis of claim when and as often as it may reasonably require, and, in ease of death, the right and opportunity to make an autopsy if not prohibited by law.”
Finally, when it became apparent in 1982 that the claims were quickly depleting the source of funds, L & H in 1982 discussed with the trustees the need to raise the rates in 1982. There is no indication either that a representative from Harbor was present when that decision was made, or that Harbor was consulted with regard thereto.
Therefore, based on our review of the evidence, we affirm the judgment based on the trial judge’s finding that Harbor was not a fiduciary.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.